## Edward Seagraves *v.* The Railroad Bank.

Where a lien and power of sale upon and over the shares of stockholders, is given by char-
ter, to a bank, for the security and satisfaction of debts due from the stockholders to the
bank, a court of equity will enjoin a sale, or, under equitable circumstances, set aside a
conveyance of shares, attempted or made by the bank against the will of an insolvent
stockholder, for the satisfaction of a debt really due to a director under color that the
same is due to the bank; such sale being a fraudulent abuse of a statute power, and a
fraudulent attempt, without the authority of the stockholder, to give preference amongst
his creditors.

BILL IN EQUITY, to enjoin the transfer, or for an account of
the proceeds of sale, of an hundred shares in the capital stock
of the defendant bank, late standing on their books in the name
of Edward Seagraves, and which the bill alleged was sold, and
is about to be transferred by the bank, through a fraudulent
perversion of a statute power, given to them to sell the stock of
a delinquent debtor of the bank to satisfy his debt to the bank.
The misconduct charged upon the bank in selling the stock,
was, that Edward C. Cranston, a director in the bank, being
the holder of a draft drawn by the stockholder, Seagraves, on
Isaac Merrit & Co. of New York, and by them accepted, in
favor of Samuel Harris, for $2,525.50, and all parties to the
draft having failed, the bank, under the false pretence that they
had discounted the draft, sold the stock of the drawer, Sea-
graves, to pay a debt due from him to Cranston, in which they,
in reality, had no interest; thus lending to a director, as alleged,
a statute authority given to them solely for their own protec-
tion.   It appeared that Seagraves was actually indebted to the
bank as drawer of two similar acceptances for $1,200 each,
which the bank had discounted, the amount of which he had
tendered to the bank to prevent the sale of his stock; but the
bank refused the tender upon such terms, unless he would also
pay the draft alleged in the bill to have been solely the prop-
erty of Cranston, and the sale proceeded.

The bill was originally filed by Seagraves; but he having,
during the pendency of the bill, made a voluntary assignment
for the benefit of his creditors, the bill was prosecuted by sup-

plemental process by his assignee. It was now heard upon the answer and proofs, which are stated with sufficient fulness in the opinion of the court, to render the decision intelligible.

*W. W. Updike,* and *William H. Potter,* for complainant.

*C. Robinson,* for respondents.

BOSWORTH, J. The bill in this case, charges upon the Railroad Bank, a fraudulent sale of the stock of Edward Seagraves, one of the stockholders of said bank, and prays that the sale of said stock, not yet perfected, may be adjudged invalid, and for a decree enjoining the bank from the completion of the sale. The ground on which the interference of the court is asked, is as follows. The bill alleges that two drafts or bills of exchange, drawn by the said Edward Seagrave, had been discounted by the bank, which the acceptor and other parties to the bills, had neglected to pay, and which the said Seagraves had offered to pay; he being liable thereon, either as original promisor or indorser, and his stock in the bank being pledged for the payment of said drafts, and all other liabilities to the bank. The bank had refused to accept payment of these bills, unless upon the payment of a certain other draft, held by the bank, for twenty-five hundred dollars, drawn by said Seagrave and accepted and indorsed by the same parties with the said two bills or drafts. This latter draft, the said Seagrave refused to pay; and the bank, claiming their lien for the payment of this, as well as the other drafts, proceeded to advertise the stock for sale at auction, under the provisions of their charter, and the same was sold on the            day of

The complainants allege, in substance, that this latter draft for twenty-five hundred dollars is not the property of the bank; but was pretendedly discounted for one Edward L. Cranston, the real owner thereof, in order to give to him the benefit of the lien, which the bank have, by their charter, on shares of their capital stock, for the security of debts due from stockholders; and that the pretended discount and subsequent sale of the stock, was in reality a proceeding to give to the said Cranston, a fraudulent preference for his debt, without the consent of said Seagrave, in fraud of him and of his creditors.

If the allegations of the bill were sustained by the proof in

the cause, the complainant would undoubtedly be entitled to relief. The lien given to the bank upon the shares of its stockholders for the security of debts due from them, is for the benefit of the bank. It is a power given to the corporation, for the security of the bank, and perhaps designed by the legislature as a security to the public, who are materially interested in the preservation of the credit and ability of banking institutions. It was, however, by no means intended by this power, given the bank for its own protection, to enable them to wield it for the benefit of others; thus interfering with the operation of the laws, and fraudulently giving to its favorites, advantages, as creditors, over other creditors whom the law places on an equal footing.

If, therefore, it was made out in proof, that this draft was, as the bill charges, pretendedly discounted in order to make the stock of Seagrave liable in this colorable manner, to secure the payment of the draft to Cranston, thus appropriating the stock of Seagrave to the payment of his debt to Cranston, against the will of Seagrave and in fraud of his other creditors, a court of equity would interfere to prevent the perpetration of the fraud; would enjoin the doing of any act for such a purpose, and would set aside or hold as void, any conveyance which may have been made with such unlawful purpose, so far at least, as any person having notice of the fraud, may have been concerned.

The answer to the bill denies the allegations of fraud, and claims that the said draft was discounted in the regular course of the business of the bank: that the amount of the bill has been paid to Edward L. Cranston, who negotiated the same at the bank, and avers that it is the property of the bank, subject to the lien provided by its charter, upon the shares of stockholders, for the security of debts due to the bank.

On examination of the evidence, we do not find the allegations of fraud to be sustained. The evidence of the complainants, at most, amounts to proof of circumstances of suspicion. The deposition of Ansel E. Bradly, a director of the bank, who was not present at the meeting of the directors at the time when the bank received the paper in question, is to the substance of

a conversation, which took place between him and Edward Harris, president of the bank, with regard to the transaction of the board of directors at the time it was received.   He states that his impression is, that Mr. Harris stated, that the object was to secure Mr. Cranston on a piece of paper which he held; and states that he means by securing Mr. Cranston, that it was discounted so that the bank might hold on to Mr. Seagraves's stock.   He also states, that he thinks Mr. Harris said, the directors got together and examined the paper of this kind which they had, and found that it did not cover Mr. Seagraves's stock, into just about the amount of Mr. Cranston's draft.

The witness, however, in his deposition states that this was so long ago, that he has no distinct recollection of the conversation.   He also states in his deposition, that he had heard Mr. Cranston state that the money for the discount was to be in the bank until the draft was collected.

This deposition is contradicted by the testimony of Mr. Harris; and by the testimony of several of the directors, including that of Metcalf, whose deposition is taken by the complainants, it appears, that nothing was said of the purpose of the bank to discount the paper for the security of Mr. Cranston, at the meeting of the board.   It does not appear by the deposition of any witness, who was present at the meeting of the directors, that any such examination of paper, covered by Seagraves's stock, was made by the directors, as the witness thinks Mr. Harris stated there was; and Mr. Harris and other directors, who were present, distinctly say that they had then no expectation of resorting to the stock for the payment of the draft, and that the paper would not have been taken, if the necessity of such resort had been suggested as probable.

The deposition of Mr. Metcalf is the testimony of one of the directors, who was present at the meeting, when the paper in question was received by the bank.   He testifies to the circumstances of the meeting of the directors; that the president stated that Mr. Cranston wanted a piece of paper discounted; that it was talked over a few moments by the directors, and they all agreed to discount it.   He cannot recollect all the conversation that took place before discounting the note, but Mr.

Cranston stated that he did not want to use the money at present. He states that it was well understood that the acceptors and indorsers had failed; the news having come that day. He states that nothing was said about the object of having the paper discounted at the time. He also says that there was a bond taken from Mr. Cranston, to the bank, to secure them against loss by reason of holding the stock for his benefit; and he states that he believed the discount was made for the purpose of securing Mr. Cranston, and for no other purpose; though in another part of his deposition, he says he don't know as that was the object of all the board of directors, and he should not be willing to say that it was. He also says, that if he had believed that the paper would not have been paid at maturity, and that the bank would be obliged to rely on Seagraves's stock, as security for its payment, he would not, as a director, have consented to the taking of it by the bank.

The testimony of this witness seems to be erroneous in some important particulars. According to the testimony of the cashier and several other directors, whose testimony is taken by the respondents, no such bond as is referred to in his deposition, was taken. All the other directors, who were present at the meeting, whose testimony has been taken, distinctly swear that no purpose, such as is charged, of securing Mr. Cranston by the discount, was entertained by them; and that the paper would not have been discounted, if they had anticipated any necessity of resorting to the stock for security. Two of the directors testify, that at the time of the discount, the witness, Metcalf, who was the brother-in-law of Seagraves, stated his belief of the ability of Seagraves to pay the draft, and that if it was not paid by the other parties, at maturity, it would be promptly paid by him.

The answer in this case denies the allegations of fraud in the bill; the proof made by the complainants is of circumstances of mere suspicion; the principal circumstances relied on as proof of fraudulent intent, such as the taking of a bond of indemnity for holding the stock for Cranston's benefit—the examination of the paper held by the bank covered by Seagraves's stock—and the making it a condition that the money should

not be paid to Cranston until the draft was collected—are all disproved by depositions in the cause. The cashier testifies that the paper was discounted at an adjournment of a regular meeting of the directors, and was discounted in the usual way, without any suggestion of benefit to Cranston, and without any condition, except that, the person by whom it was negotiated should guarantee the payment instead of indorsing it, as the paper had been sent forward for collection, and therefore could not be indorsed. The proof made by the respondents, explicitly negatives any fraudulent intent; and the proof offered by the complainant is not sufficient to establish the charge made in the bill.

The bill must, therefore, be dismissed with costs for the respondents.